IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| **STC TOWERS, LLC** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | |
| ) | |
| **CITY OF DEXTER, STATE OF** ) | |
| **MISSOURI** ) | **Case No.:** 1:25-cv-204 |
| ) | **Jury Trial Demanded** |
| Serve:  Crystal Bishop, City Clerk ) | |
|    City Administration Office ) | |
|    301 East Stoddard Street ) | |
|    Dexter, MO 63841 | |
| | |
| **Defendant.** | |

## COMPLAINT

Plaintiff STC Towers, LLC (hereinafter, "**STC**" or "**Plaintiff**"), by and through undersigned counsel, for its Complaint against Defendant City of Dexter, Missouri (hereinafter, the "**City**" or "**Defendant**"), hereby states and alleges the following:

### I.   NATURE OF THE ACTION

1. This is an action for declaratory and injunctive relief, and mandamus relief pursuant to the Federal Telecommunications Act of 1996 ("**FTA**"), codified at 47 U.S.C. §332(c)(7), and federal regulations adopted thereunder, and pursuant to 28 U.S.C. §2201, and pursuant to the Missouri Uniform Wireless Communications Infrastructure Deployment Act ("**Missouri Siting Act**"), codified at RS Mo §67.5090, *et seq.*, to establish that the City's failure to timely act on STC's application to construct a wireless support structure and wireless facility  (collectively, **"Wireless**

**Telecommunications Facility**" or "**WTF**") in Dexter, Missouri violates the FTA and the Missouri Siting Act. First, STC seeks declaratory relief under the Federal Declaratory Judgment Act, establishing that the City's governing authority failed to act within a reasonable period and thereby engaged in a failure to act under 47 U.S.C. § 332(c)(7)(B), as well as supplemental declaratory relief under RSMo § 527.010 that STC's application is *deemed approved* pursuant to the provisions of RSMo §67.5096. Furthermore, STC seeks injunctive relief compelling the City to issue all permits and approvals necessary for construction of the WTF contemplated by the application and to cooperate in good faith with the processing and implementation thereof.

## II.  PARTIES, JURISDICTION, AND VENUE

2.  Plaintiff STC is, and at all times relevant hereto has been, an Indiana limited liability company formed and licensed to conduct business in the State of Missouri and has a registered agent located in the State of Missouri. None of STC's members are residents of Missouri.

3.  Defendant City of Dexter is a Missouri local government municipality, or instrumentality thereof, organized and existing under the laws of the State of Missouri with the capacity to sue and be sued.  Defendant may be served through the City's Clerk at the address above.

4.  This Court has federal question jurisdiction under 28 U.S.C. § 1331, as the case arises under federal law, specifically 47 U.S.C. § 332(c), concerning expansion of wireless networks and construction of a Wireless Telecommunication Facility.

5.  The Court also has original jurisdiction over this matter pursuant to 28 U.S.C.

107092166.4

§ 1332(a) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different States.

6. Plaintiff seeks relief pursuant to the Federal Declaratory Judgment Act, codified as 28 U.S.C. §§ 2201–2202, which enables parties in controversy to seek declaration of their rights and remedies pursuant to federal law.

7. Additionally, Plaintiff seeks declaration of its rights pursuant to RSMo § 527.010 (Missouri's version of the Declaratory Judgment Act) to determine its rights arising from RSMo §§ 67.5090–67.5103 regarding expansion of wireless networks and construction of wireless telecommunication facilities within the state of Missouri.

8. The Court has supplemental jurisdiction over Plaintiff's state claims (RSMo §§ 67.5090–67.5103) pursuant to 28 U.S.C. § 1367(a), because those claims are so related to Plaintiff's federal claim (47 U.S.C. §332) that they form part of the same case or controversy.

9. A real and present case and controversy is presented.

10. Venue is proper in this District because the City of Dexter is located within the Eastern District of Missouri and the events giving rise to these claims occurred here. *See* 28 U.S.C. § 1391.

### III. FACTUAL ALLEGATIONS

11. Plaintiff hereby incorporates by reference the preceding paragraphs as if fully set forth herein.

12. On or about December 16, 2022, STC initiated communications with the City inquiring about the necessary approvals to construct a WTF (the "**Project**") on leased

107092166.4

property located approximately at 410 W Business US 60 Dexter, MO 63841 owned by Kevin Schmidt and zoned C-2, Highway Commercial District (the "**Property**").

13. STC intends to sublease space on the WTF to Verizon Wireless to provide "commercial mobile radio service" on the Property, as defined by the Federal Communications Commission ("**FCC**"). Verizon Wireless is in the process of developing and expanding its wireless telecommunication network across the United States, including the State of Missouri and intends to sublease the Project (as defined below) to construct a wireless telecommunications facility on the Property (as defined below) to provide personal commercial mobile radio services to the public.

14. On the same day, December 16, 2022, the City's Clerk responded to STC's inquiry via email that "This property has been inquired about before. The proposed location is within a close proximity to an emergency operations tower." Furthermore, on December 19, 2022, the City's Clerk noted in an email that "there are two towers already in that area with (sic) 2000 feet one is an EMS/EMA emergency tower, and another is AT&T."

15. On or about February 9, 2023, the City's City Administrator, David Wyman, in an email, indicated that STC would need to obtain a development permit from the City's governing board responsible for reviewing development permit applications.

16. On or about April 26, 2023, STC requested the City provide a form development permit application.

17. Despite multiple follow-ups, the City failed to respond or otherwise provide the requested form to STC.

4

107092166.4

18. STC submitted its own development permit application for the Project on or about November 3, 2023. *See* Development Permit Application attached hereto as **Exhibit A**.

19. On or about December 5, 2023, STC received a letter from the City's building inspector, Gary Williams, dated November 30, 2023, indicating that a Telecommunication Tower cannot be placed on the Property. *See* City's Nov. 30, 2023, Letter attached hereto as **Exhibit B**. This was purportedly due to the fact that the City had amended its zoning regulations in May 2023 to eliminate all zoning districts from telecommunication towers except for land zoned A-1 Agricultural or I-1 Industrial District. Notably, the City never previously advised STC of this change despite communications regarding the Project dating back to December 2022.

20. The City's Nov. 30, 2023, Letter did not include a formal denial of STC's Development Permit Application for the Project.

21. On May 2, 2024, STC submitted a Use Variance Application (the "**Application**") to the City which, if approved, would enable the Project to proceed on the Property notwithstanding the ordinance amendments. *See* the Application attached hereto as **Exhibit C**.

22. After submitting the Application, STC reached out to the City's attorney to schedule a hearing with the City's Board of Adjustment that would be the governing body responsible for reviewing the Application.

23. Despite multiple follow-ups, the City failed to respond to STC's communications regarding scheduling a hearing with the City's Board of Adjustment or

107092166.4

request for updates on the status of the Application.

24. 47 U.S.C. Section 332 (c)(7)(B)(ii) of the Federal Telecommunications Act of 1996 requires a State or local government to act as follows:

"A State or local government or instrumentality thereof shall act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request."

25. On November 18, 2009, the FCC released Declaratory Ruling *In Re: Petition for Declaratory Ruling to Clarify; Provisions of Section 332(c)(7)(B) to Ensure Timely Siting Review, Etc.* FCC 09-99 (FCC November 18, 2009) (the "**2009 FCC Declaratory Order**") clarifying Section 332(c)(7) (B) of the 1996 Telecommunications Act. Among other things, the 2009 FCC Declaratory Order permits a wireless service provider whose application has been pending for a period of ninety (90) days for collocation application, and one hundred fifty (150) days for all other applications ("**Federal Shot Clock**") to seek judicial review on the basis that a state or local permitting authority failed to act on the application within "a reasonable time."

26. On September 29, 2024, one hundred and fifty (150) days had passed since the Application was submitted to the City. As of this date, the City had failed to effectively approve or deny the Application in accordance with federal law.

27. On August 28, 2014, the State of Missouri adopted the 2014 Uniform Wireless Communications Infrastructure Deployment Act, RS Mo 67.5090 *et seq*., and established a *shot clock* period for a new wireless support structure of one hundred twenty

6

(120) days ("**State Shot Clock**").  The *remedy* for violating the State Shot Clock is as follows: "[a]n application shall be *deemed approved* if an authority fails to act on the application within the 120-calendar day review period." *See* RS Mo Section 67.5096.4.

28. On August 30, 2024, one hundred and twenty (120) days had passed since the Application was submitted to the City. As of this date, the City had failed to effectively approve or deny the Application in accordance with Missouri law.

29. On or about October 30, 2024, STC provided a letter to the City advising that, pursuant to state and federal laws, the Application was now *deemed approved* due the City governing authority's failure to either formally approve or deny the Application by expiration of the federal and state "shot clocks."  *See* Application Approval Letter attached hereto as **Exhibit D**. The City failed to respond to this letter.

30. STC provided the City with an additional letter on February 24, 2025, requesting issuance of building permit for the Project consistent with approval of the Application. *See* STC February 24, 2025, Letter attached as **Exhibit E**. The City also failed to respond to this letter.

31. On or about March 27, 2025 (after no communication since April 2023), the City's Manager, David Wyman, communicated to STC via email that "I am not sure about the approval from the state and federal level, but [STC] has not been granted a building permit from the City of Dexter."

32. In response, STC reiterated that the Application was already deemed approve pursuant to state and federal law and continued to communicate with the City about cooperating in the construction of the Project on the Property. The City continued to be

7

107092166.4

uncooperative.

33. On or about October 3, 2025, the City's Manager, David Wyman, indicated during a phone conversation with STC that they intended to issue a stop work order to prevent STC from completing any improvements on the Property and that Mr. Wyman himself had made the final decision that the Project could not move forward based on his own opinion and without any explanation or supporting evidence that the WTF would endanger the health, safety and welfare of the residents of the City of Dexter.

34. STC provided a final letter to the City on October 8, 2025, indicating that it would be seeking further legal recourse should the City fail to provide acknowledgement of the Application's approval under the law, and assurances that it would not interfere with completion of the Project on the Property. The City failed to respond to this letter.

## IV. CLAIMS FOR RELIEF

### COUNT I
*Declaratory Judgment Under Rule 57 & 28 U.S.C. § 2201*

35. Plaintiff hereby incorporates by reference the preceding paragraphs as if fully set forth herein.

36. The Federal Telecommunications Act of 1996, codified as 47 U.S.C. § 332 governs mobile services, addressing competition, public safety, and spectrum allocation. Importantly, it imposes restrictions on state and local authority over wireless facility placement to prevent service prohibitions.

37. Under § 332(c)(7)(B)(ii), the City's governing board was required to act on STC's request within a "reasonable period of time" after the request was duly filed, taking

107092166.4

into account the nature and scope of the request.

38. On or about November 18, 2009, the FCC issued a Declaratory Ruling establishing presumptive timeframes for state and local governments to act on siting applications pursuant to 47 U.S.C. § 332 (the "**Declaratory Ruling**").

39. The Declaratory Ruling determined that, under Section 332(C)(7)(B), one hundred and fifty (150) days is a "reasonable period" for acting upon sitting applications, and failure to act within that timeframe constitutes a failure to act for which an applicant may seek judicial relief. This 150-day period is commonly known as the federal statutory "shot clock".

40. STC submitted its Application to the City on May 2, 2024.

41. Under Section 332(C)(7)(B), the City's Board of Adjustment had up and until September 29, 2024, to formally approve or disapprove STC's Application for a new WTF on the Property.

42. The City's Board of Adjustment failed to act on the Application on or before September 29, 2024, the expiration of the shot clock.

43. On or about October 3, 2025, during a phone call with STC's attorney, the City Manager, David Wyman, indicated he had personally made the final decision to prohibit the Project from moving forward. However, at no point did City Manager Wyman nor any governing body of the City provide STC with a written denial of the Application supported by substantial evidence contained in a written record as required by 47 U.S.C. § 332(7)(B)(iii).

44. Accordingly, STC seeks a declaration that: (1) the City Manager's

unauthorized and independent decision to reject consideration of the Application is ineffective and contrary to the law, (2) the City never provided STC with a written denial of the Application supported by substantial evidence contained in a written record as required by 47 U.S.C. § 332(7)(B)(iii), (3) the City's governing authority for reviewing applications failed to act within a reasonable period of time under § 332(c)(7)(B)(ii) with respect to STC's Application and has therefore engaged in a failure to act within the meaning of § 332(c)(7)(B)(v), and (4) due to the City's failure to act, STC's Application is deemed approved.

## COUNT II
### *Declaratory Judgment Under RSMo § 527*

45. Plaintiff hereby incorporates by reference the preceding paragraphs as if fully set forth herein.

46. The Missouri Siting Act, RSMo § 67.5090-5103, is intended to encourage and streamline the deployment of broadcast and broadband facilities and to help ensure that robust wireless radio-based communication services are available throughout Missouri.

47. Pursuant to RSMo §67.5092, "authority" includes any municipal governing body authorized by law and acting in its capacity to make decisions relating to zoning or building permit review of an application. Furthermore, "application" includes any request submitted by an applicant to an authority to construct a new "wireless support structure."

48. The City designated the Board of Adjustment to consider and make determinations relating to zoning or building permit applications, including variance

requests.

49. Under RSMo § 67.5096, an authority must make its final decision to approve or disapprove an application for a new wireless support structure within one hundred and twenty (120) calendar days of receiving the application. If the authority fails to act within that review period, "the application shall be deemed approved." This 120-day period is known as the Missouri's statutory "shot clock".

50. On May 2, 2024, STC formally submitted its Application to the City for review by the Board of Adjustment.

51. Under RSMo §67.5092, the City's governing "authority"—the City's Board of Adjustment—had up and until August 30, 2024, to approve or disapprove STC's Application for a new wireless support structure on the Property.

52. The City's Board of Adjustment failed to act on the Application on or before August 30, 2024, the expiration of the shot clock.

53. Furthermore, RSMo § 67.5094 provides that an authority may not evaluate an application "based on the availability of other potential locations for the placement of wireless support structures or wireless facilities."

54. When STC first approached the city about installing a new cell phone tower on the Property, the City's Clerk indicated that the proposed location for the new cell tower would be problematic given its proximity to other pre-existing cell towers in the area.

55. On or about October 3, 2025, during a phone call with STC's attorney, City Manager David Wyman indicated he had personally made the final decision to prohibit the Project from moving forward. However, at no point did City Manager Wyman nor any

11

governing body of the City provide STC with a formal written decision to approve or disapprove the Application as required by Missouri law. *See* RSMo § 67.5096(4).

56. STC seeks a declaration that: (1) the City improperly considered nearby towers in evaluating the Project in violation of RSMo § 67.5094, (2) the City Manager's unauthorized and independent decision to reject consideration of the Application is ineffective and contrary to the law, and (3) its Application is deemed approved under RSMo § 67.5096(5) given the governing authority for reviewing applications did not formally approve or reject the Application, in consideration of the procedural requirements as set forth under state law, by the shot clock deadline.

## COUNT III
### *Injunctive Relief*

57. Plaintiff hereby incorporates by reference the preceding paragraphs as if fully set forth herein.

58. Should the Plaintiff obtain the declaratory relief it seeks, Plaintiff further requests this Court administer injunctive relief by requiring the City to act consistently with the Court's finding that STC's Application is deemed approved under federal and Missouri law.

59. Furthermore, STC seeks injunctive relief directing the City to issue all necessary permits and to cooperate with approval and processing of STC's Application, and construction of the wireless support structure on the Property.

## COUNT IV
### *Writ of Mandamus*

60. Plaintiff hereby incorporates by reference the preceding paragraphs as if

107092166.4

fully set forth herein.

61. Mandamus actions are available under Missouri law to compel a government entity to perform a duty, provided certain conditions are met. *Furlong Companies, Inc. v. City of Kansas City*, 189 S.W.3d 157, 166 (Mo. 2006); *see also* Mo. Sup. Ct. R. 94.

62. A writ of mandamus is appropriate to compel a government body to perform a non-directional duty that it is charged with carrying out. *State ex rel. Basinger v. Ashcroft*, 677 S.W.3d 562, 565 (Mo. Ct. App. 2023).

63. Pursuant to RSMo § 67.5096, approval of the Application is non-directional following expiration of the statutory "shot clock". As such, the City has no right to exercise any further discretion or judgment in regard to approval of the Application.

64. Under the express terms of RSMo § 67.5096, Plaintiff has a clear, unequivocal, right to recognition of the Application's approval and performance of the City's administerial duties consistent therewith. *Ashcroft*, 677 S.W.3d at 565 (Mo. Ct. App. 2023).

65. Despite Plaintiff's notice to the City that the Application is deemed approved and repeated requests that the City issue ministerial permits, acknowledgments, and authorizations necessary to construct the Project, the City has refused and continues to refuse to affirm the Application's approval, to issue the building permit, and to perform tasks consistent with such approval, all of which are ministerial obligations in light of the Application's approval.

66. Plaintiff has suffered prejudice due to the City's failure to abide by the law and act consistent with the procedures set forth in RSMo § 67.5096. *Pub. Sch. Ret. Sys. of*

13

*Sch. Dist. of Kansas City v. Missouri Comm'n On Hum. Rts.*, 188 S.W.3d 35, 41 (Mo. Ct. App. 2006).

67. Plaintiff respectfully requests that the Court issue a peremptory writ of mandamus directing the City, and its officers, agents, and employees acting in their official capacities, to: (a) formally acknowledge and affirm that Plaintiff's Application is approved; (b) issue all ministerial permits, licenses, acknowledgments, and authorizations necessary to construct the Project and associated facilities on the Property as proposed; and (c) take ministerial steps and cooperate in good faith to effectuate and implement the approval.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Declare under 47 U.S.C. § 332(c)(7)(B)(ii)(v) that the City failed to act within a reasonable period of time on STC's Application, and that such inaction constitutes a failure to act.

B. Declare that the Application is deemed approved under federal law by the City's failure to act within a reasonable time period as required by 47 U.S.C. § 332.

C. Declare that the City improperly considered nearby towers in evaluating the Project in violation of RSMo § 67.5094.

D. Declare that the City Manager's unauthorized and independent decision to reject consideration of the Application is ineffective and contrary to the law.

E. Declare that, under RSMo § 67.5096, the Application is deemed approved given the City's governing authority for reviewing applications did not formally approve or reject the Application, in consideration of the procedural requirements as set forth under

state and federal law, by the shot clock deadline.

F.	Issue injunctive relief requiring the City to issue all permits and approvals necessary for the construction of the wireless support structure as proposed, and to cooperate in good faith to effectuate the Application deemed approved.

G.	Issue a writ of mandamus directing the City, its officers, agents, and employees to: (1) formally acknowledge and affirm the approval of Plaintiff's Application for the construction of the wireless support structure; (2) issue all necessary permits, licenses, and authorizations required for the construction and operation of the Project and associated facilities on the Property as proposed; and (3) perform all ministerial tasks and cooperate in good faith to implement the approval and facilitate the construction process.

H.	Award such other and further relief as the Court deems just and proper.

## VI.  JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

**POLSINELLI PC**

By:  /s/ Anthony L. Springfield
ANTHONY L. SPRINGFIELD (#54074MO)
MARY T. ARGANA (#75464MO)
900 W. 48th Place, Suite 900
Kansas City, MO 64112
(816) 753-1000
Fax No: (816) 753-1536
aspringfield@polsinelli.com
margana@polsinelli.com

ATTORNEY FOR PLAINTIFF STC

107092166.4